UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LOZANO and AUGUSTINE LOZA, individually and on behalf of all others similarly situated, | § | |
| Plaintiffs, | § | |
| v. | § | 1:15-cv-1192-RP |
| WESTERN CONCRETE PUMPING, INC., CHUCK REED, and BRETT REID, | § | |
| Defendants. | § | |
| v. | § | |
| CORBY ALLBRIGHT, | § | |
| Cross Defendant. | § | |

**ORDER**

Before the Court are Cross-Defendant Corby Allbright's Motion to Dismiss, filed June 10, 2016, (Dkt. 28), Defendant and Cross-Complainants Western Concrete Pumping Inc., Chuck Reed, and Brett Reid's response, and Allbright's reply. After reviewing these filings and the relevant case law, the Court issues the following order.

## I. BACKGROUND

This action began when Plaintiffs Christopher Lozano and Augustine Loza filed suit against Western Concrete Pumping, Inc. ("Western"), Chuck Reed, and Brettt Reid (collectively, "Defendants"), on December 18, 2015. Plaintiffs were employees of Western, which "owns and operates numerous concrete pumping trucks throughout the United States." (Compl. ¶ 54; Dkt. 1.) Plaintiffs allege that "Defendants would physically alter and systematically reduce the total number of hours worked reported on Plaintiffs' time cards in order to reduce the amounts Plaintiffs were paid during each pay period and to deprive Plaintiffs of their rightfully owed wages, including

overtime compensation." (*Id.* ¶ 56.) Plaintiffs allege collective action claims against Defendants under the Fair Labor Standards Act ("FLSA") for failing to pay Plaintiffs overtime, for failing to pay Plaintiffs for all hours worked, and for "failing to make, keep and preserve adequate and accurate records of . . . hours and wages." (*Id.* ¶¶ 93–106.) Plaintiffs also allege class action claims against Defendants under the Texas Labor Code ("TLC") and Texas common law for failing to pay class members for all hours work and for failing to pay agreed-upon wages. (*Id.* ¶¶ 106–132.)

On March 7, 2016, Defendants filed an answer to Plaintiffs' complaint. That same day, Defendants also filed a cross-claim against Corby Allbright, who was not initially a party to the suit. In their cross-claim, Defendants alleged that Cross-Defendant Allbright ("Allbright") became Vice President of Western's Texas operations on April 5, 2012. (Cross-cl. ¶ 11; Dkt. 15.) In that role, Allbright "was solely responsible for the day-to-day management and operations of Western's business in Texas," (*Id.* ¶ 12.) Defendants allege that these responsibilities included:

> (1) sales and client development; (2) equipment maintenance; (3) contract negotiations; (4) hiring and firing employees; (5) supervising and controlling employees schedules; (6) maintaining employment records; (7) determining the rate and method of wages for employees; (8) determining wages owed to employees; (9) reviewing employee time cards and determining the number of hours worked and compensation owed to each employee including determination of overtime; (10) enforcement of workplace policies and procedures; and (11) insuring that Western complied with all applicable local, state and federal laws and regulations.

(*Id.*) Defendants allege that Allbright "employed and managed Plaintiffs and similarly situated workers at all times," and was an "employer" under both the FLSA and the TLC. (*Id.* ¶¶ 14–17.) Defendants assert that Allbright "is thus personally liable" for the violations alleged by Plaintiffs. (*Id.* ¶ 18.)

In addition to these allegations about Allbright's role in Plaintiffs' employment and his responsibilities at Western generally, Defendants make numerous allegations about Allbright's misappropriation of company funds. Specifically, Defendants allege that Western and Allbright "entered into an oral contract whereby Western agreed to advance certain

amounts to [Allbright] for his personal expenses including mortgage payments on his residence, legal fees and bail following his arrest for contempt of Court." (*Id.* ¶ 19.) Defendants allege that these advances, which were made between late January and early June of 2015, totaled $21,153.00. (*Id.*)

Beginning in April, however, Defendants allege that Allbright improperly withdrew funds from Western's bank account in Texas, totaling approximately $65,057.00. (*Id.* ¶ 22.) Defendants allege that these funds were used for Allbright's personal expenses, including hotel rooms, fishing equipment, food and alcohol, and hunting charges, and were unrelated to Western's business. (*Id.*) They also alleged that Allbright "retained cash payments made to him by Western's clients for services provided by Western." (*Id.* ¶ 24.)

In June, Defendants allege that they detected a series of questionable actions by Allbright, and that on July 21, 2015 Allbright was ordered "to take a mandatory 30-day paid leave of absence to settle his personal matters." (*Id.* ¶¶ 20–21.) Allbright resigned on August 7, 2015. (*Id.* ¶ 23.)

Defendants bring ten causes of action[1] against Allbright: (1) conversion, for Allbright's alleged misappropriation of $65,057.00 of Western's funds (*Id.* ¶¶ 28–33); (2) fraud, for Allbright's alleged falsified expenses and reimbursement submissions to Western that were incurred for his own personal use (*Id.* ¶¶ 34–40); (3) breach of fiduciary duty, related to Allbright's alleged misappropriation of Western's funds and his failure to ensure compliance with Western's employment policies and procedures and labor law (*Id.* ¶¶ 41–48); (4) unjust enrichment, based on Allbright's alleged misappropriation of Western's funds (*Id.* ¶¶ 49–53); (5) negligence, for Allbright's alleged breach of his duty of care in administering and managing Western's funds and his duty of care in failing to properly manage Western's Texas operations and employee relations (*Id.* ¶¶ 54–58);

[1] Defendants list eleven causes of action, but the eleventh cause of action is instead a prayer for relief, not a cause of action that would create an independent basis for relief. (Cross-cl. at 13; Dkt. 15.)

(6) imposition of a constructive trust, for Allbright's alleged misappropriation of Western's funds (*Id.* ¶¶ 59–66); (7) joint and several liability under the FLSA, to the extent Defendants are liable for Plaintiffs' claims (*Id.* ¶¶ 67–69); (8) money had and received, for Allbright's alleged misappropriation of Western's funds (*Id.* ¶¶ 70–74); (9) breach of oral contract, for Allbright's alleged failure to repay Western for advanced funds (*Id.* ¶¶ 75–80); and (10) complete indemnity, to the extent Defendants are liable for any of Plaintiffs' claims (*Id.* ¶¶ 81–83).

On June 10, 2016, Allbright moved to dismiss Defendants' cross claims against him for two primary reasons. First, he asserts that Defendants' causes of action related to Plaintiffs' putative class action for federal and state wage and hour violations must be dismissed because Defendants lack standing to bring the claims, have failed to adequately allege that Allbright is an employer under the FLSA, and that the Fifth Circuit bars wage and hour claims for indemnification by employers against employees. Second, he argues that the remaining causes of action are unrelated to the operative complaint filed by Plaintiffs, and must be dismissed. Defendants respond that their crossclaims against Allbright meet the standard set by Federal Rule of Civil Procedure 8(a), and that this Court has supplemental jurisdiction to adjudicate the claims related to Allbright's alleged misappropriation of Western's funds because they arise from the same case or controversy as Plaintiffs' claims.

The Court will first consider Allbright's motion to dismiss Defendants' causes of action against Allbright related to Plaintiffs' wage and hour claims, and then consider whether the remaining causes of action are properly adjudicated as part of the same case or controversy as Plaintiffs' initial claims.

## II. MOTION TO DISMISS

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby*

*Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify allegations in the complaint that are no more than legal conclusions or "[t]hreadbare recitals of a cause of action's elements," then assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Allbright alleges that each of Defendants' claims against him related to Plaintiffs' wage and hour claims "essentially seek indemnification and resulting reimbursement for Allbright's alleged wrongoing." (Mot. to Dismiss at 2; Dkt. 28). He moves to dismiss these claims, arguing that the Defendants do not have standing to pursue them, do not adequately allege that Allbright is an employer under the FLSA, and that the Fifth Circuit bars such indemnification claims by employers against employees.

A. Standing

As an initial matter, Allbright argues that Defendants do not have standing because they are not employees under the FLSA. The Court disagrees, and concludes that Defendants have standing

to bring claims that seek indemnification for possible violations against Allbright.[2] To establish constitutional standing, a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Defendants currently face allegations of liability for federal and state wage and hour violations. They allege that Allbright is responsible for any such violations, and thus should indemnify them against Plaintiffs' claims.[3] These allegations are sufficient to confer standing on Defendants.

Because the Court concludes that Defendants have standing to bring claims related to indemnification for Plaintiffs' claims against Allbright, it will next address whether Defendants have adequately pled these claims against Allbright. Allbright alleges that these claims must be dismissed for two reasons—first, because Allbright is not Plaintiffs' "employer," and second, because the Fifth Circuit bars indemnification claims by employers against their employees for FLSA violations.

B. Plaintiffs' "Employer"

Plaintiff brings wage and hour claims under the FLSA, the TLC, and Texas common law against Defendants. In turn Defendants have alleged that Allbright is liable for any such claims via four causes of action.[4] The Court will consider whether Defendants have sufficiently alleged that Allbright was an "employer," or could otherwise be liable for Plaintiffs' claims.

[2] "Standing is an issue of subject-matter jurisdiction, and can be contested by a Rule 12(b)(1) motion to dismiss." *Am. Const. Benefits Grp., LLC v. Zurich Am. Ins. Co.*, No. 3:12–CV–2726–D, 2014 WL 144974, *1 (N.D. Tex. Jan. 15, 2014). When a party makes a facial challenge to the claims, alleging that the allegations in the pleadings are insufficient to create standing, courts assess the motion as they do a Rule 12(b)(6) motion to dismiss. *Id.*

[3] And as Defendants further note, Federal Rule of Civil Procedure 13(g) expressly considers and allows a crossclaim for liability that alleges that a "coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Fed. R. Civ. P. 13(g).

[4] The third, fourth, seventh, and tenth causes of action, for breach of fiduciary duty, negligence, joint and several liability, and complete indemnity, respectively, each incorporate allegations related to Allbrights' involvement with Plaintiffs' wage and hour claims. (Cross-cl. ¶¶ 41–48, 54–58, 67–69, 81–83.)

1. Individual Liability Under the FLSA and the TLC

The FLSA generally requires "employers" to pay their employees a minimum wage and overtime for workweeks longer than forty hours. 29 U.S.C. §§ 206(a), 207(a). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit uses the "economic reality" test to identify when there is an employer/employee relationship under the FLSA. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). "To determine whether an individual . . . is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at 355 (quoting *Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990)).

Here, Defendants have adequately alleged that Allbright was an employer under the FLSA. They allege that Allbright was Vice-President of Western's Texas operations, and solely responsible for the company's day-to-day management. (Cross-cl. ¶ 12.) Defendants allege that in this role, Allbright's responsibilities included hiring and firing employees, supervising and controlling employee schedules, determining the rate and method of payment for employment for wages, and maintaining employment records. (*Id.*) Defendants further allege that Allbright's responsibilities also include determining wages owed to employees based on their time cards and enforcement of workplace policies and procedures. (*Id.*)

Allbright agrees that he was "Vice President of Texas operations" at Western. (Mot. to Dismiss at 7; Dkt. 28.) Further, he does not directly dispute Defendants' allegations regarding his responsibilities, but argues that his "stature and presence within the company does not rise to that which subjects him to individual liability under the FLSA." (*Id.*) The Court disagrees, and determines

that Defendants have plausibly alleged that Allbright can be held individually liable for Plaintiffs' claims under the FLSA.

The TLC also obligates employers to comply with minimum wage requirements. *See* Tex. Labor Code § 62.051. Like the FLSA, the TLC defines an employer as any "person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 62.002(6), thus the Court finds that Defendants have adequately alleged that Allbright is an employer for purposes of the TLC.[5]

2. Individual Liability for Plaintiffs' Common Law Claims

Defendants claim "full indemnification" from Allbright in the event they "are held liable to any extent at all on Plaintiff's Complaint." (Cross-cl. ¶¶ 82–83.) However, the Court concludes that Defendants' claims for indemnification from liability arising out of Plaintiffs' common law claims must be dismissed.

In Texas, the availability of common law indemnity is extremely limited. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 (5th Cir. 1992). Generally, it only exists in tort, *see B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980) ("The common law doctrine of indemnity is yet another of these common law rules which results in shifting total responsibility for a tort from one party to another."), and the Texas Supreme Court has "confirmed that a defendant cannot ordinarily claim a right to common law indemnity from a joint tortfeasor." *Id.* at 831. Instead, it "survives in negligence actions to protect a defendant whose liability is purely vicarious in nature." *Id.* "For a right of indemnity based on vicarious liability to exist," however, "the injured party must have a cause of action against the indemnitor, that is, the one whose action caused the indemnitee to be vicariously liable." *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347

---

[5] Importantly, the TLC's minimum wage requirements only apply where the FLSA's do not. *Id.* § 62.151.

S.W.3d 825, 833 (Tex. App.—Dallas 2011, no pet.) ("There is no right of indemnity against a defendant who is not liable to the plaintiff.")

Here, Plaintiffs' common law claims include breach of contract, quantum meruit, unjust enrichment, and unpaid debts. (Compl. ¶¶ 113–32.) These claims are all premised on Defendants' agreement to pay Plaintiffs wages in exchange for their labor, and are based in contract, not tort. Further, Defendants are not alleged to be vicariously liable for Allbright's actions—Plaintiffs have premised their common law claims on Defendants' actions. Nor have Defendants alleged any facts that would suggest Allbright could be held liable by the Plaintiffs on their common law claims. Thus, to the extent Defendants' claims against Allbright are premised on Plaintiffs' common law claims, they must be dismissed.

C. Indemnification Claims Against Employees Under the FLSA

Allbright argues that even if the Court determined that Defendants have adequately alleged that he is an employer under the FLSA, Defendants' claims—which essentially seek indemnification for Plaintiffs' claims—have "been expressly disallowed by the Fifth Circuit." (Mot to Dismiss at 6; Dkt. 28.) Allbright primarily relies on *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260 (5th Cir. 1986), to support this argument.

In *LeCompte*, several plaintiffs brought FLSA claims against their employer, Chrysler Credit Corporation. *Id.* at 1261–62. Chrysler Credit filed a counterclaim for indemnity against two of the plaintiffs "based on the theory that they, when acting in a supervisory capacity, had perpetrated the [FLSA] violations for which Chrysler Credit is . . . liable." *Id.* at 1264. The district court dismissed Chrysler Credit's counterclaims, and the Fifth Circuit affirmed the dismissal. *Id.* The Fifth Circuit reasoned that allowing a claim for indemnity under the FLSA "would not serve the congressional purpose of creating and maintaining minimum standards of employment throughout the national economy." *Id.* Instead, "an employer who believed that any violation of the overtime or minimum

wage provisions could be recovered from its employees would have a diminished incentive to comply with the statute and might be inclined to close its eyes." *Id.* Further, it explained:

> No cause of action for indemnity by an employer against its employees who violate the Act appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory. Where Congress has undertaken to regulate an area, state law must yield to the extent it is in conflict with the validly exercised federal law-making effort.

*Id.*

Defendants seek to distinguish *LeCompte*, arguing that in its cross-complaint, it adequately alleged that Allbright is an "employer" under the FLSA, while *LeCompte* addressed whether an "employee" can be sued for indemnification under the FLSA. While the Court acknowledges that the Fifth Circuit's opinion in *LeCompte* does not expressly address whether the two supervisory plaintiffs in the case were "employers" of the other plaintiffs under the FLSA, it disagrees with Defendants that *LeCompte* is inapplicable here. Instead, the Court finds that the reasoning in *LeCompte* is applicable in any case where an employer seeks indemnification through state-law causes of action from an employee—even in cases where the individual employee that the employer seeks indemnification from is also an "employer" under the FLSA. *See LeCompte*, 780 F.2d at 1264 ("No cause of action for indemnity by an employer against its employees who violate the Act appears in the statute, nor in forty years of its existence has the Act been construed to incorporate such a theory."). Certainly, if an employer could pin liability for FLSA violations on its managers, who were also "employers" under the FLSA, the employer "would have a diminished incentive to comply with the statute." *LeCompte*, 780 F.2d at 1264. And although this Court determined that Defendants have adequately alleged that Allbright was an "employer" under the FLSA, it is also undisputed that he was Western's employee. *See* 29 U.S.C. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer.").

Further, while Defendants seek to undermine the authority Allbright identifies to assert that indemnification against employees for FLSA violations is barred by the Fifth Circuit, they point to no authority that *allows* such a claim by an employer. In fact, other courts have expressly addressed whether an employer may seek indemnification for FLSA violations from another "employer" who is also an employee under the FLSA and determined that they cannot. *See*, *e.g.*, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 143 (2d Cir. 1999) (affirming dismissal of employer's claim for contribution or indemnification under the FLSA because his "status as an employer places him outside of the statute's intended protection, regardless of the status of the party from whom he seeks contribution"); *Quintana v. Explorer Enterprises, Inc.*, No. 09-22420-CIV, 2010 WL 2220310, at *1–3 (S.D. Fla. June 3, 2010) (granting motion to dismiss counterclaim by defendant who alleged that one of the plaintiffs was potentially liable for violating the FLSA as "an employer within the meaning of the FLSA"). Thus, Defendants' claims which seek contribution or indemnification from Allbright for alleged FLSA violations must be dismissed.

The TLC's minimum wage provisions only apply to employers that are not covered by the FLSA, thus few cases even address it. The Court concludes, however, that some of the same rationales that exist for not allowing indemnification under the FLSA exist here—namely that allowing indemnification would reduce incentivizes for employers to comply with the TLC. Further, the Texas legislature did not provide for indemnification by an employer under the statute, and indemnification is extremely limited under Texas common law. Thus, the Court will similarly dismiss Defendants' claims related to indemnification under the TLC.

## III. SUPPLEMENTAL JURISDICTION

Finally, Allbright argues that this Court does not have supplemental jurisdiction to adjudicate Defendants' remaining claims against Allbright, related to his alleged misappropriation of Western's

funds, can be adjudicated as part of this action.[6] Defendants, in their cross-complaint, assert that "[t]his Court has supplemental jurisdiction over this [c]ross-complaint pursuant to 28 U.S.C. § 1367(a)." (Cross-cl. ¶ 9.) Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words, the "claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Allbright asserts that Defendants' claims against him related to his alleged misappropriation of Western's funds arise from entirely different facts from Plaintiffs' claims. Defendant responds that "both the Plaintiffs' claims against [Defendants] and [Defendants'] claims against Allbright arise from Allbright's mismanagement of his position as the employer of Plaintiffs." (Defs.' Resp. ¶ 32; Dkt. 31.) The Court is not persuaded by Defendants' argument. Even if Defendants' claims against Allbright were not dismissed, the facts related to whether Allbright somehow mismanaged the payment of overtime wages to employees are entirely unrelated to the facts about whether Allbright submitted false reimbursement receipts to Western or failed to pay Western back for cash advances. Particularly in light of this Court's decision to dismiss Defendants' claims against Allbright related to Plaintiffs' wage and hour claims, Defendants' other claims against Allbright are not part of the same case or controversy brought by Plaintiffs, and must be dismissed.

---

[6] Although Defendants argue that Allbright failed to properly assert a motion to dismiss for lack of subject-matter jurisdiction, this Court has an independent obligation to ensure that is has jurisdiction over cases before it. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Cross-Defendant Corby Allbright's Motion to Dismiss (Dkt. 28) is **GRANTED**.

**SIGNED** on August 23, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE